

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# 16 CV 8239

-------------------------------------------------------- x

AIRBNB, INC.,

                Plaintiff,

    - against -

ERIC SCHNEIDERMAN, Attorney General of
the State of New York, in his official capacity;
CITY OF NEW YORK, a municipal corporation;
and BILL DE BLASIO, Mayor of New York
City, in his official capacity,

                Defendants.

-------------------------------------------------------- x

Case No.

**COMPLAINT TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF MULTIPLE DWELLING LAW SECTION 121 & NEW YORK CITY ADMINISTRATIVE CODE SECTION 27-287.1**

For its complaint, plaintiff Airbnb, Inc. ("Airbnb") alleges:

## I.    INTRODUCTION

1.     This is an action to enjoin and declare unlawful the enforcement against Airbnb by the State of New York (the "State") and the City of New York (the "City") (collectively, the "government") of New York Multiple Dwelling Law Section 121 and New York City Administrative Code Section 27-287.1 (the "Act"). This action is brought pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1367, the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.     As applied to Airbnb, the Act directly conflicts with, and is preempted by, section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 (the "CDA").[1] Application of the Act to Airbnb would hold Airbnb liable for the content of rental listings created and posted by third-parties on Airbnb's platform. As such, the Act unquestionably treats online platforms such as Airbnb as the publisher or speaker of third-party content and is completely preempted by the CDA.

---

[1] Airbnb does not concede that it is subject to liability under a correct interpretation of the Act, and expressly preserves the argument that it is not. The Act would be unlawful *if* it were to be applied to Airbnb.

3.      The Act also suffers from several other defects: It is an unjustifiable content-based restriction on speech in violation of the First Amendment; its lack of a *mens rea* or scienter requirement violates both the First Amendment and the Due Process Clause; it is impermissibly vague regarding whether its provisions apply to hosting platforms like Airbnb; and it violates the home rule clause of the New York State Constitution.

4.      The Act makes it "unlawful to advertise occupancy or use" of accommodations that cannot lawfully be rented out for less than 30-day periods, whether or not the publisher of the advertisement knows or has reason to know the advertisement is for an unlawful rental. Violators face hefty civil penalties and the possibility of criminal prosecution.

5.      The Act does not expressly state whether websites and other intermediaries, such as online platforms like Airbnb that host third-party listings, "advertise" within the meaning of the law and thus are subject to liability. Given the ambiguity of the Act, Airbnb anticipates the government will argue that the Act applies to such online platforms, and will seek to enforce the Act against Airbnb and other such hosting platforms. Airbnb thus faces the real prospect of being the subject of an enforcement action under the Act. For the following reasons, any such enforcement would be unlawful and should be enjoined.

6.      First, the enforcement of the Act against Airbnb is preempted by the CDA, which aims "to promote the continued development of the Internet" and "to preserve" its "vibrant and competitive free market." 47 U.S.C. § 230(b)(1)-(2). In furtherance of these goals, the CDA expressly preempts state and local laws that treat a website "as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1), (e)(3). The Act does just that—by imposing hefty penalties on a website for displaying allegedly unlawful ads posted by users.

7.      Second, the Act also violates Airbnb's and hosts' First Amendment rights. It is a content-based restriction on advertisements—in the form of rental listings—which are protected speech under the First Amendment. The Act seeks to punish hosts for advertising short-term rentals and Airbnb for publishing hosts' advertisements if the advertisements are for short-term

rentals that do not comply with New York state or municipal law.  To justify this content-based restriction on speech, the government bears the burden of showing that the Act is narrowly tailored to further a substantial government interest.  The government cannot carry this burden because there is a less-restrictive means available to enforce the New York law.  Instead of targeting the speech, the government instead could simply enforce its existing short-term rental law directly against hosts who violate it.

8.      Third, the Act violates the First Amendment and the Due Process Clause of the Fourteenth Amendment insofar as it provides for the possibility of liability based on the creation or publication of advertisements in the absence of any *mens rea* or scienter requirement.  The Act impermissibly creates a strict-liability crime for advertising short-term rentals that violate State law, even if hosts or hosting platforms like Airbnb have no knowledge of the violation.

9.      Fourth, the Act violates the First Amendment and the Due Process Clause of the Fourteenth Amendment on vagueness grounds because it fails to provide a reasonable person with notice regarding whether its operative prohibitions apply to hosting platforms like Airbnb.

10.      Fifth, the Act violates the home rule clause of the New York State Constitution, N.Y. Const. art. IX, § 2(b)(2), because it is a legislative act relating to the affairs of New York City but was not enacted by the Legislature in response to a request from City officials, and it does not have any reasonable relationship to any substantial state concern.

11.      If this Court does not enjoin enforcement of the Act, Airbnb (and its hosts) will be forced to choose between two outcomes, both of which impair free speech: either block most or all third-party listings or risk substantial criminal and civil penalties for allowing these advertisements to remain on their site.  The Act will therefore cause irreparable harm to both online providers of third-party rental listings and the public at large in either scenario, by eliminating or significantly impairing free speech in online forums.

## II.    PARTIES

12.      Plaintiff Airbnb is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California.  It maintains a

website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

13.     Defendant Eric Schneiderman is Attorney General of the State of New York.

14.     Defendant City of New York is an incorporated municipality within the State of New York.

15.     Defendant Bill de Blasio is Mayor of New York City, an incorporated municipality within the State of New York.

16.     Defendants Attorney General Schneiderman and Mayor de Blasio are sued in this action in their official capacities as representatives of the State of New York and City of New York.

### III.     JURISDICTION AND VENUE

17.     This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges violations of its rights under the Constitution and laws of the United States.

18.     Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over Airbnb's claim arising under the New York State Constitution because it is so related to the federal claims in this action that it forms part of the same case or controversy under Article III of the United States Constitution.

19.     This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

20.     Venue is proper in this Court under 28 U.S.C. § 1391 because the Mayor resides in this District and both he and the Attorney General are residents of the State of New York, and because a substantial part of the events giving rise to Airbnb's claims for relief occurred in this judicial district.

## IV.   FACTUAL ALLEGATIONS

### A.   Airbnb

21.     Founded in 2008, Airbnb provides an Internet platform through which persons desiring to book accommodations ("guests"), and persons listing unique accommodations available for rental ("hosts"), can locate each other and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

22.     Airbnb does not manage, operate, lease or own hosts' accommodations, and it is not a party to the direct agreements between third-party guests and hosts for the booking of accommodations offered by hosts.  Airbnb provides a platform through which interested hosts can list their accommodations, hosts and guests can locate one another, and hosts and guests can message each other directly to determine the material terms of their bookings.  The platform also provides payment processing services allowing hosts to receive payments electronically.  In consideration for use of its platform, Airbnb receives a service fee from both the guest and host, determined as a percentage of the accommodation fee set solely by the host.

23.     Only hosts decide whether to list their properties, what their prices and terms of booking are, and when and with whom to transact.  As Airbnb's Terms of Service state, hosts "alone are responsible for any and all Listings and Member Content [they] post."[2]  Hosts provide the descriptions of their rentals, set their lengths of stay, determine the prices and whether the entire property or a portion thereof is available for rent, and decide when and with whom they want to enter into agreements.  Airbnb plays no role in this process.

24.     Airbnb advises its hosts and guests to be aware of and comply with local law in listing and renting units listed on Airbnb.  The Airbnb Terms of Service reference at their outset parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," and state that:

> IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS
> WORK IN THEIR RESPECTIVE CITIES.  SOME CITIES HAVE LAWS
> THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR

---

[2] Airbnb, "Terms of Service," https://www.airbnb.com/terms (last visited October 11, 2016).

SHORT PERIODS.  THESE LAWS ARE OFTEN A PART OF A CITY'S ZONING OR ADMINISTRATIVE CODES.  IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS.  CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.[3]

25.     Airbnb maintains a "Responsible Hosting" section on the Airbnb website specific to New York City that provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and business regulations.[4]

26.     The "Responsible Hosting" page for New York City informs hosts that "it's important for you to understand the laws in your city" and provides links to City websites that describe New York State and New York City law informing hosts explicitly that "[t]he New York State Multiple Dwelling Law restricts renting out a Class A multiple dwelling for periods of fewer than 30 days."[5]

27.     Airbnb is committed to helping provide solutions tailored to meet the needs of cities like New York City with historic housing challenges.  Airbnb discretionarily removes listings that it believes may be offered by hosts with multiple "entire home" listings or by unwelcome commercial operators.  If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings.  In fact, within the last year, Airbnb removed numerous New York City listings from its platform as part of its efforts.  As of September 2016, Airbnb had removed over 2,900 listings from New York City from hosts with multiple listings that could impact long-term housing availability.

28.     In New York, there are approximately 46,000 hosts who post listings on Airbnb as of October 1, 2016.  The typical New York host rents a unit for 36 nights a year on Airbnb, and earns approximately $5,300 in income.  78% of Airbnb hosts in New York earn low,

---

[3] *Id.*

[4] Airbnb, "New York, NY," https://www.airbnb.com/help/article/868/new-york--ny (last visited October 20, 2016).

[5] *Id.*

moderate, or middle incomes, and 72% of Airbnb hosts in New York use the money they earn from sharing their space to help them to be able to stay in their homes.[6]

**B.      New York Law and Relevant Legislative History**

29.      In 2010, the State of New York enacted a law that prohibits the rental of "multiple dwellings" for less than 30 days.  "Multiple dwelling" is defined as a dwelling "occupied as the residence or home of three or more families living independently of each other."  N.Y. Multiple Dwelling Law ("MDL") § 4-7.  The 2010 law contains two exemptions.  First, a rental of a multiple dwelling for less than 30 days is permissible for "[o]ther natural persons living within the household of the permanent occupant such as house guests or lawful boarders, roomers or lodgers."  *Id.* § 4-8(a)(1)(A).  Second, such a rental is permissible for "incidental and occasional occupancy ... by other natural persons when the permanent occupants are temporarily absent for personal reasons such as vacation or medical treatment, provided that there is no monetary compensation paid to the permanent occupants for such occupancy."  *Id.* § 4-8(a)(1)(B).  New York State Senator Liz Krueger, the sponsor of the 2010 law, publicly stated it was not aimed at Airbnb.[7]

30.      On May 26, 2015, Senator Krueger testified before the Federal Trade Commission.  She stated that "Section 230 of the Communications Decency Act of 1996 protects online service providers and users from actions against them based on the content of third parties."  As a result, she explained, "companies like Airbnb and other online booking platforms oftentimes can act with near immunity from prosecution ...."  She urged the Commission to "work with Congress to amend Section 230."[8]

---

[6] Airbnb, "Data on the Airbnb Community in New York City," https://www.airbnbaction.com/data-on-the-airbnb-community-in-nyc/ (last visited October 20, 2016).

[7] Brian Caulfield, *Airbnb: The Ebay for the Entire House*, FORBES (Nov. 18, 2010), http://www.forbes.com/forbes/2010/1206/technology-airbnb-sequoia-capital-ebay-startup-next-door.html (last visited October 11, 2016).

[8] Comments of New York State Senator Liz Krueger before the Federal Trade Commission, *The "Sharing" Economy: Issues Facing Platforms, Participants, and Regulators* (May 26, 2015), https://www.ftc.gov/system/files/documents/public_comments/2015/05/01816-96161.pdf (last visited October 20, 2016).

31.     On January 6, 2016 and January 31, 2016, respectively, the Act was introduced in the Senate and Assembly.  New York State Assemblymember Linda Rosenthal, who sponsored the bill (Assembly Bill 8704-C), publicly stated the bill would stop Airbnb from providing the "platform that enables its hosts to break the laws of New York State that are in place to protect tenants and affordable housing."[9]

32.     That legislation passed the Assembly on June 16, 2016, and the Senate on June 17, 2016.  Governor Cuomo signed the legislation into law on October 21, 2016.

33.     The legislation amends both the MDL and the Administrative Code of New York City to make it "unlawful to advertise occupancy or use of dwelling units in a class A multiple dwelling for occupancy that would violate subdivision eight of section four of this chapter defining a 'class A' multiple dwelling as a multiple dwelling that is occupied for permanent residence purposes."  MDL § 121(1); N.Y.C. Admin. Code § 27-287.1(1).

34.     The Act specifies that, for purposes of the MDL, "advertise" means "any form of communication for marketing that is used to encourage, persuade or manipulate viewers, readers or listeners into contracting for goods and/or services as may be viewed through various media including, but not limited to, newspapers, magazines, flyers, handbills, television commercials, radio, signage, direct mail, websites or text messages."  MDL § 121(3).

35.     The Act further specifies that, for purposes of the Administrative Code, "advertise" means "any form of communication, promotion or solicitation, including but not limited to direct mail, newspapers, magazines, flyers, handbills, television commercials, radio, signage, direct mail, websites, text messages *or similar displays, intended or used to induce, encourage or persuade the public to enter into a contract for goods and/or services*."  N.Y.C. Admin. Code § 27-287.1(3) (italics added).[10]

---

[9] Jennifer Fermino, *Airbnb Battles New York Regulators on 'Strict' Home Sharing Law*, NY DAILY NEWS (June 15, 2016), http://www.nydailynews.com/news/politics/airbnb-battles-n-y-regulators-strict-home-sharing-law-article-1.2674070 (last visited October 20, 2016).

[10] The italicized text appears in the definition of "advertise" in the Administrative Code, but not the definition of "advertise" in the MDL.

36.     A violation of the new sections of the MDL and the Administrative Code may result in a civil penalty of not more than $1,000 for the first violation, $5,000 for the second violation, and $7,500 for the third and every subsequent violation.  MDL § 121(2); N.Y.C. Admin. Code § 27-287.1(2).

37.     Other sections of the Administrative Code provide that any "agent, architect, builder, contractor, engineer, or any other person who commits or assists in" a violation of the code shall be subject to civil judicial enforcement of the code, including "the payment of civil penalties" of up to $25,000.  N.Y.C. Admin. Code §§ 28-205.1, 28-202.1.  In addition, a separate section of the Administrative Code provides that that any "agent, architect, builder, contractor, engineer, or any other person who commits or knowingly assists in" a violation of the code "shall be guilty of a criminal offense punishable by a fine or imprisonment or both . . . ." N.Y.C. Admin. Code § 28-206.1; *see also id.* § 28-203.1.

38.     Similarly, a separate section of the MDL provides that "every person who shall violate or assist in the violation of any provision of this chapter shall be guilty of a misdemeanor punishable, for a first offense, by a fine of not exceeding five hundred dollars or by imprisonment for a period of not exceeding thirty days, or by both such fine and imprisonment; for the second and any subsequent offense arising from the failure to remove the violation upon which the first offense was based, by a fine of not exceeding one thousand dollars or by imprisonment for a period of not exceeding six months, or by both such fine and imprisonment." MDL § 304(1).

39.     The Act took effect immediately after signing by the Governor.

40.     In a June 2016 hearing on the Act, a lawmaker asked with respect to Airbnb, "who is responsible for the advertising?"  New York State legislative counsel responded "that both the renter and the [platform] service are advertising the units," implying that both could face liability under the Act.[11]

---

[11] Shane King, *Report on June 14, 2016 Assembly Standing Committee Meeting on Codes*, New York State Watch (June 14, 2016).

41.     At a subsequent hearing on the Act, Assemblymember Rosenthal explained, in response to a question from a colleague, that "it is the host" alone who would be subject to liability under the Act, since "the host ... is the person advertising," and "Airbnb is protected by the Communications Decency Act and that gives them Federal immunity for liability for service providers from content generated by third-party user[s] of the service, which is the host."[12]

42.     The text of the Act is vague as to whether liability under it may be imposed on Airbnb in its role as a hosting platform that publishes third-party rental listings.  The Act might be read to extend only to *hosts*, since as a general matter, the party offering goods or services is the one said to "advertise," whereas media outlets and other platforms for advertising are said to *publish* or *broadcast* advertisements.  But it is also possible that the government might argue that the Act imposes liability on hosting platforms like Airbnb as well—either directly or by virtue of the secondary-liability provisions of Chapter 28 of the New York City Administrative Code and section 304 of the Multiple Dwelling Law.  *See* N.Y.C. Admin. Code §§ 28-205.1, 206.1 (imposing criminal and civil liability on any "agent, architect, builder, contractor, engineer, or any other person" who commits or assists in a violation); MDL § 304 (imposing criminal and civil liability on "every person who shall violate or assist in the violation of any provision of this chapter").[13]

43.     The Act relates to the affairs of New York City, but was not enacted in compliance with the procedures of the home rule clause of the New York State Constitution.  The Act was not the subject of any home rule message from the City or City officials.

44.     The Act's restrictions will make it more difficult for City residents to use home-sharing to help pay their rent or mortgage, making the City less affordable for City residents, contrary to the law's purported justifications of addressing affordable housing issues.  Similarly, the substantial penalties applicable under the law will inflict significant economic hardship on

---

[12] Transcript of June 17, 2016 Hearing of the New York State Assembly, at 58, https://goo.gl/pwhRCO (last visited October 20, 2016).

[13] Airbnb does not concede that it would in fact be subject to criminal liability under a correct interpretation of the Act, and expressly preserves the argument that it would not be.

City residents who rely on home-sharing to make ends meet, in conflict with the City's otherwise stated policies.   Indeed, the Mayor has touted the fact that his administration has significantly reduced fines assessed against small businesses, noting that "[s]mall businesses need support and resources – not onerous fines for violations that don't pose any risk to consumers," and that "[r]educing these fines is a bedrock of our effort to make it easier to open and operate a small business in New York City ...."[14]

45.     The Act does not require, as a prerequisite to the imposition of civil or criminal liability, that the party advertising an unlawful listing know or have reason to know that the listing in question is unlawful.

46.     Airbnb faces a threat of prosecution and penalties under the Act because the government could construe the Act in a manner that would impose liability on Airbnb for publishing third-party rental listings that the Act makes unlawful.

47.     If allowed to remain in effect, the Act would impose significant immediate burdens and irreparable harm on Airbnb.  In order to be assured of avoiding liability, including potential criminal prosecution, Airbnb would be required to screen and review every listing a host seeks to publish on Airbnb's platform advertising a housing rental in New York.  Performing this task would require a massive expenditure of time and resources on the part of Airbnb.  Rather than incur this expense, Airbnb very likely will be forced to remove entire categories of rentals, encompassing many lawful listings, which will constitute an illegal infringement on the free speech of Airbnb and its hosts.

48.     The Act also creates the incorrect perception that Airbnb's own activities are unlawful.  This perception will lead to the sort of reputational injury and loss of goodwill that irreparably harms a business.

---

[14] NYC Press Release, *De Blasio Administration Reduces Fines Assessed by Consumer Affairs on Businesses in Half, Cuts Violations Issued by One Third Over Past Year* (July 31, 2015), http://www1.nyc.gov/office-of-the-mayor/news/530-15/de-blasio-administration-reduces-fines-assessed-consumer-affairs-businesses-half-cuts (last visited October 20, 2016).

## V.   CLAIMS FOR RELIEF

### CLAIM 1:  VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND THE SUPREMACY CLAUSE OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

49.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

50.     The Communications Decency Act defines an "interactive computer service" as "any information service … that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet …." 47 U.S.C. § 230(f)(2). Thus, Airbnb is a provider of an interactive computer service within the meaning of the Communications Decency Act because it operates the interactive online platform Airbnb.com and provides information to multiple users by giving them computer access to a computer server

51.     The third-party hosts that create listings on Airbnb.com are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3).

52.     The Act violates Airbnb's rights under 47 U.S.C. § 230(c)(1), which states that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," because enforcement of the Act against Airbnb—insofar as it would impose criminal and/or civil liability on Airbnb for the publication of third-party rental listings on its platform—would treat Airbnb, a provider of an interactive computer service, as the publisher or speaker of information provided by another information content provider.

53.     The Act is a "State … law that is inconsistent with" Section 230, in direct violation of 47 U.S.C. § 230(e)(3).

54.     The Act also interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

55.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the State and City to prevent enforcement of the Act, which would conflict with and violate the CDA.

### CLAIM 2:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

#### (Content-Based Restrictions on Speech)

56.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

57.     By prohibiting certain rental advertisements and imposing civil and/or criminal liability based on advertising, the Act imposes a content-based speech restriction on Airbnb's and hosts' speech, including commercial speech, based on hosts' creation of the advertisements and the publication of those third-party advertisements by Airbnb.

58.     The restriction on speech imposed as a result of enforcement of the Act against Airbnb or hosts is not narrowly tailored to directly advance a compelling state interest.  Instead of seeking to impose liability on hosts for advertising or on Airbnb for publishing third-party advertisements, the government could instead enforce short-term rental laws directly against hosts who rent their residences in a manner that does not comply with the law.  The government has not shown, and cannot show, that this less-speech-restrictive alternative would be an inadequate means of achieving its policy goals.

59.     The Act would also have an impermissible chilling effect on speech because it will prevent Airbnb from publishing any third-party listing which Airbnb is unable to confirm complies with the Act.  As such, the Act will likely force Airbnb to remove lawful listings. Similarly, the Act will force many hosts to forgo advertising short-term rentals because they will not be able to determine whether their advertisements are lawful under the terms of the Act. Given the substantial criminal and civil penalties for non-compliance, and the difficulty (and sometimes practical impossibility) of confirming that a short-term rental advertisement complies

with the Act, hosts may refrain from creating, and platforms may refrain from publishing, even lawful listings.

60.      The enforcement of the Act against Airbnb therefore violates the First Amendment of the U.S. Constitution, as applied to the State and City by the Fourteenth Amendment.

61.      Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the State and City, whose enforcement of the Act against Airbnb would conflict with and violate the First Amendment.

## CLAIM 3:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

### (Imposition of Criminal and Civil Penalties Without Scienter)

62.      Airbnb incorporates all previous paragraphs as if fully set forth herein.

63.      The imposition of criminal and civil penalties under the Act violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because it purports to impose strict liability on hosts who advertise unlawful short-term rentals and platforms that publish such advertisements, in the absence of proof of scienter.

64.      The Act does not require a showing that the host or platform *knew* the third-party listing at issue advertised a non-compliant rental.  The Act therefore would impose strict criminal and civil liability on hosts for creating unlawful listings or Airbnb for publishing those listings that ultimately prove to violate the Act, even if Airbnb or the host has no knowledge of the violation.

65.      Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the State and City, whose enforcement of the Act through criminal and civil penalties would conflict with and violate the First Amendment and Due Process Clause of the Fourteenth Amendment.

## CLAIM 4:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

### (Vagueness)

66.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

67.     Enforcement of the Act against Airbnb would violate the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Act fails to provide an ordinary person with fair notice of whether liability under the Act may be imposed on Airbnb in its role as a hosting platform that publishes rental third-party listings, and is thus impermissibly vague.  This vagueness is further evidenced by the confusion of the lawmakers, who disagreed as to whether it applies to Airbnb.[15]

68.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the State and City, whose enforcement of the Act against Airbnb would conflict with and violate the First Amendment and the Due Process Clause of the Fourteenth Amendment.

## CLAIM 5:  VIOLATION OF THE HOME RULE CLAUSE OF THE NEW YORK STATE CONSTITUTION, N.Y. CONST. ART. IX, § 2(B)(2)

69.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

70.     The Act constitutes a legislative action that relates to the affairs or government of New York City because it amends the New York City Administrative Code and because the legislative history of the Act confirms that concerns specific to New York City were the primary driving force behind the Act.

71.     The prefatory "Justification" section for the Act states that the original genesis of changes in short-term rental laws was "an explosion of illegal hotel operators in single room occupancy buildings *in New York City*," and that the Act seeks to "protect communities and existing affordable housing stock" (emphasis added).

---

[15] Shane King, *Report on June 14, 2016 Assembly Standing Committee Meeting on Codes*, New York State Watch (June 14, 2016); Transcript of June 17, 2016 Hearing of the New York State Assembly, at 58, https://goo.gl/pwhRCO (last visited October 20, 2016).

72.     The Act, which concerns matters local to New York City, should have been enacted in compliance with the procedures for such laws set forth in the home rule clause.[16]

73.     The Act does not have any reasonable relationship to any area of substantial state concern. First, it was enacted in response to local problems, and conflicts with the interests of out-of-City state residents. Indeed, the Act's restrictions will serve to make it more difficult for out-of-City state residents to find affordable housing options when visiting the City. In addition, the Act's restrictions on advertising are unnecessary because existing short-term rental laws can instead be enforced directly against hosts who may violate them.

74.     Further, the Act's restrictions and substantial penalties will make it more difficult for City residents to use home-sharing to help pay their rent or mortgage, making the City less affordable for City residents, contrary to the law's purported justifications of addressing affordable housing issues and the City's own policies of reducing fines on small businesses and for low-level criminal offenses.

75.     Pursuant to section 2(b)(2) of article nine of the New York State Constitution and 28 U.S.C. § 1367, Airbnb seeks injunctive relief against the State and City, whose enforcement of the Act against Airbnb would conflict with and violate the home rule clause of the New York State Constitution.

## CLAIM 6:  DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

76.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

77.     This action presents an actual case or controversy between Airbnb and Defendants concerning the validity and enforceability of the Act.

78.     Because the Act violates the CDA, 47 U.S.C. § 230, the First and Fourteenth Amendments of the United States Constitution, and the home rule clause of the New York State Constitution, Airbnb seeks and is entitled to a declaration pursuant to 28 U.S.C. § 2201 that the Act is invalid and unenforceable.

---

[16]        N.Y. Const. art. IX, § 2(b)(2).

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

79.     Declare that, as applied to Airbnb, the Act violates 47 U.S.C. § 230 and the Supremacy Clause because it would permit the imposition of penalties as a result of the publication of third-party rental advertisements or other information by third-party hosts on Airbnb.com and impose duties on Airbnb with respect to its protected publishing and editorial acts concerning third-party rental advertisements;

80.     Declare that, as applied to Airbnb, the Act violates the First and Fourteenth Amendments because it would place content-based restrictions on speech by imposing criminal and civil penalties on Airbnb as a result of the publication of third-party advertisements of multiple dwelling units for fewer than 30 days, and the restrictions that the Act would impose are not narrowly tailored to promote a compelling or substantial interest on the part of the government;

81.     Declare that, as applied to Airbnb, the Act violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because it purports to impose strict criminal and civil liability for the publication of third-party listings in the absence of proof of *mens rea* or scienter;

82.     Declare that, as applied to Airbnb, the Act violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Act is unconstitutionally vague and fails to provide an ordinary person notice of the conduct it punishes;

83.     Declare that, as applied to Airbnb, the Act violates the home rule clause of the New York State Constitution because it relates to the affairs or government of New York City but does not satisfy the requirements of section 2(b)(2) of article nine of the New York State Constitution;

84.   Preliminarily and permanently enjoin Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons in concert or participation with them, from taking any actions to enforce the Act against Airbnb;

85.   Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

86.   Award Airbnb such other and further relief as the Court deems just and proper.

84.     Preliminarily and permanently enjoin Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons in concert or participation with them, from taking any actions to enforce the Act against Airbnb;

85.     Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

86.     Award Airbnb such other and further relief as the Court deems just and proper.

DATED:  October 21, 2016                    GIBSON, DUNN & CRUTCHER LLP

                                            MYLAN L. DENERSTEIN


By:   *Mylan L. Denerstein*
      MYLAN L. DENERSTEIN
      Attorneys for Plaintiff Airbnb, Inc.

      Gibson, Dunn & Crutcher LLP
      200 Park Avenue
      New York, NY 10166-0193
      (212) 351-3850
      (212) 351-6350 (fax)
      mdenerstein@gibsondunn.com

      MUNGER, TOLLES & OLSON LLP

      JONATHAN H. BLAVIN (to be admitted *pro hac vice*)


      Munger, Tolles & Olson LLP
      560 Mission Street, 27th Floor
      San Francisco, CA 94105-2907
      (415) 512-4011
      (415) 512-4077 (fax)
      jonathan.blavin@mto.com

      *Attorneys for Plaintiff Airbnb, Inc.*

18